Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Deana S. Peck (Ariz. Bar No. 004243)
*dpeck@quarles.com*
John Craiger (Ariz. Bar No. 021317)
*jcraiger@quarles.com*

Attorneys for Defendant
First National Mortgage Sources, L.L.C.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE BILTMORE BANK OF ARIZONA, an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST NATIONAL MORTGAGE SOURCES, L.L.C., a foreign limited liability corporation,<br><br>Defendant. | NO. 2:07-CV-936-PHX-MEA<br><br>**DEFENDANT FIRST NATIONAL MORTGAGE SOURCES, L.L.C.'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** |

Defendant First National Mortgage Sources, L.L.C. ("FNMS") hereby responds to the Motion for Partial Summary Judgment filed by Plaintiff The Biltmore Bank of Arizona ("Biltmore") and simultaneously cross-moves for Summary Judgment on Plaintiff's claims. This Motion is based on, and supported by, the attached Memorandum of Points and Authorities, FNMS's Separate Statement of Facts ("FNMS SSOF") and Controverting and Supplemental Statement of Facts ("FNMS CSSOF"), and exhibits thereto filed concurrently herewith, as well as the Court's file herein.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

In this case, borrower, Karapet Ter-Abraamyan ("Ter-Abraamyan") sought to finance or refinance his home. FNMS, a mortgage broker, submitted his loan application to Biltmore, which performed whatever due diligence it considered appropriate in its underwriting process. Based on its own due diligence, Biltmore decided to fund two loans to Ter-Abraamyan on such terms as Biltmore, as the lender, deemed appropriate. Each loan was secured by a Deed of Trust on the borrower's home in Las Vegas, Nevada. Biltmore then sold at least one of Ter-Abraamyan's loans in the secondary market, to EMC Mortgage Corporation ("EMC"). Of course, EMC, the purchaser of the loan, took not only the note evidencing the indebtedness, but also the Deed of Trust serving as security for the indebtedness. In the American home mortgage industry, it is standard practice that the two instruments -- the note and the deed of trust -- are transferred together in any later sale (or "repurchase") of a loan. They travel together, as if joined at the hip. As we shall see, Biltmore's loan documents acknowledge this very fact.

Things apparently did not go well with the Ter-Abraamyan loan. EMC demanded that Biltmore repurchase the loan. However, Biltmore ended up cutting a different deal with EMC, which reduced the amount of Ter-Abraamyan's indebtedness that Biltmore had to pay to EMC, but also left Biltmore without the security for the loan. As a result, when Biltmore sought to have FNMS repurchase the loan, Biltmore was incapable of providing the security for the loan to FNMS and, hence, did not, and could not, make a proper repurchase demand under the parties' Wholesale Broker Agreement ("Agreement"). After all, FNMS had not agreed to repurchase just half a loan -- and the "bad" half at that, *i.e.*, an *unsecured* indebtedness that was already in default. Such was not the loan that Biltmore had made and certainly not one that FNMS was obligated to repurchase.

1  For Biltmore to prevail in this case, the Court would have to ignore the clear and unambiguous terms of the Agreement and give the term "loan repurchase" an interpretation wholly inconsistent with its reasonable and contemplated meaning. For Biltmore to prevail, the Court would, in effect, have to rewrite the Agreement to provide Biltmore with greater rights of indemnification against loss than Biltmore had bargained for or that FNMS had agreed to give. For these reasons, the Court should deny Biltmore's Motion for Partial Summary Judgment.

Further, the Court should grant summary judgment in favor of FNMS because, under the undisputed facts, FNMS did not breach any obligation to repurchase the Ter-Abraamyan loan. No breach occurred because no duty to repurchase arose. Biltmore made no proper demand for repurchase. But, even if it had made a proper demand in other respects, no duty to repurchase arose because Biltmore did not satisfy a condition precedent to the existence of such a duty -- *i.e.,* that it offer to return the security for the loan to be repurchased.

## II.  Statement of Facts

Biltmore is a full-service bank that provides various types of loans to businesses and individuals. [See FNMS SSOF at ¶ 1] FNMS is a wholly-owned subsidiary of First National Bank that acted as a mortgage broker during all times relevant hereto. [SSOF at ¶ 2] Biltmore and FNMS are parties to the Agreement, which sets forth the terms upon which Biltmore agreed to fund loans originated and submitted to Biltmore by FNMS. [SSOF at ¶ 3] Under that Agreement, FNMS acted only as a broker, and did not have any ability to conduct due diligence or underwriting for the loans it brokered to Biltmore. [SSOF at ¶ 4] Further, FNMS had no authority to either approve or deny loans sought by the applicants it brought to Biltmore. [SSOF at ¶ 4]

As outlined in the Agreement, in the event Biltmore was required to repurchase a loan originally submitted by FNMS, Biltmore may make a proper demand for repurchase

of the loan to FNMS. [SSOF at ¶ 5] Specifically, Section K of the Agreement is entitled **REPURCHASE** and provides: "Repurchase shall . . . be required of Broker if for any reason a demand for repurchase is made by any agency or investor with respect to any mortgage loan funded by Lender for Broker that is not curable by Broker." [SSOF at ¶ 6] In addition, Section L of the Agreement provides that if Biltmore desires to "request the repurchase of a loan" under the Agreement, Biltmore is to send notice of such a request by Registered or Certified Mail to the following address: First National Mortgage Sources, LLC, 2809 Hall, Hays, KS 67601. [SSOF at ¶ 7]

In June 2006, Biltmore approved and funded two loans submitted by FNMS for non-party Ter-Abraamyan. [SSOF at ¶ 8] These loans were secured by Deeds of Trust encumbering certain property located at 4047 Bridgeview Circle in Las Vegas, Nevada. [SSOF at ¶ 9] Sections 20 of both Deeds of Trust relate to the potential future sale of the loan and state, in pertinent part, that the loan (variously described as the "Note" or "Agreement") or a partial interest therein "*(together with this Security Instrument)* can be sold one or more times without prior notice to Borrower." [SSOF at ¶ 10 (emphasis added)]

Biltmore later sold the First Loan to EMC Mortgage ("EMC"), which subsequently required Biltmore to repurchase the loan. [SSOF at ¶ 11][1] Sometime on or prior to January 25, 2007, counsel for FNMS received a telephone call from counsel for Biltmore, in which counsel for Biltmore took the position that FNMS was obligated to repurchase

---

[1] In its Complaint, Biltmore asserts that FNMS breached their Agreement by not repurchasing the First Loan; however, in its Motion for Partial Summary Judgment, Biltmore sometimes contends that FNMS is obligated to repurchase *both* loans made to the borrower. There is no basis for such an argument. Consistent with its Complaint allegations, Biltmore offers evidence that EMC required it to repurchase only the First Loan. [Plaintiff's Statement of Facts in Support of Motion for Partial Summary Judgment at ¶¶ 8-9, and ¶¶ 4-5 of Exh. B thereto.] Thus, Biltmore has neither pleaded nor proven any basis for claiming breach as to both loans, even if Biltmore could overcome the other hurdles to its motion (which it cannot).

the First Loan under the Agreement because Biltmore had been required to repurchase the loan. [SSOF at ¶ 12] At no time, however, did Biltmore send a notice requesting repurchase of either of the Ter-Abraamyan loans by the means specified in Section L of the Agreement. [SSOF at ¶ 13]

On February 13, 2007, counsel for Biltmore sent counsel for FNMS an e-mail stating that Biltmore had "cut a deal" with EMC. [SSOF at ¶ 14] On February 26, 2007, counsel for Biltmore sent counsel for FNMS an e-mail explaining that the deal that Biltmore had previously cut with EMC included one "draw back," which was that "we are not getting the houses back to foreclose and sell." [SSOF at ¶ 15] Thus, Biltmore was not in a position to transfer back the security for the loan in a repurchase transaction and did not, in fact, offer either Deed of Trust in return for a repurchase. [SSOF at ¶ 16] FNMS did not repurchase the loan at issue from Biltmore. [SSOF at ¶ 17]

On March 20, 2007, Biltmore filed this lawsuit against FNMS and First National Bank, alleging that FNMS's refusal to repurchase the First Loan breached Section K of the Agreement. FNMS denies that it breached the Agreement with Biltmore. On April 4, 2007, Biltmore voluntarily dismissed First National Bank from the lawsuit. On September 27, 2007, Biltmore filed its Motion for Partial Summary Judgment, seeking a declaration that FNMS breached the Agreement. In this Motion, Biltmore asks the Court to declare that FNMS is obligated to repurchase the loan under the Agreement. FNMS now responds and files its own Motion for Summary Judgment, seeking a determination from the Court that FNMS did not breach its Agreement with Biltmore, is not liable to Biltmore, and is entitled to judgment dismissing the case with prejudice.

**III.     Argument**

   **A.     <u>Legal Standard</u>**

A court must grant summary judgment if the pleadings and supporting evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine

1 issue as to a material fact and that the moving party is entitled to judgment as a matter of
2 law on any legal claim. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317,
3 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).
4 Summary judgment is appropriate where a party "fails to make a showing sufficient to
5 establish the existence of an essential element to that party's case, and on which that party
6 will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party need
7 not disprove matters on which the opponent will have the burden of proof at trial. See
8 Celotex, 477 U.S. at 323. Further, a plaintiff "may not rely merely on allegations or
9 denials in its own pleading, [but] must . . . set out specific facts showing a genuine issue
10 for trial." Fed. R. Civ. P. 56(e); see Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
11 1049 (9th Cir. 1994).

**B. FNMS Did Not Breach the Agreement Because its Obligation to Repurchase Never Arose, Due to the Non-Occurrence of a Condition Precedent**

Notwithstanding Biltmore's argument to the contrary, FNMS did not breach the Agreement because a condition precedent to FNMS's obligation to repurchase the loan under the Agreement never occurred. To prove a claim for breach of contract, the plaintiff has the burden of establishing the existence of three elements: (1) a valid contract, (2) a breach of that contract, and (3) resulting damages. Chartone, Inc. v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ct. App. 2004). However, the necessary element of breach cannot be established if a party's obligation under the contract never arose. A contractual obligation does not exist if the obligation arises only after fulfillment of a condition precedent and that condition does not occur. Ruck Corp. v. Woudenberg, 125 Ariz. 519, 521, 611 P.2d 106, 108 (Ct. App. 1980); see Restatement (Second) of Contracts § 225(1) (2007) ("Performance of a duty subject to a condition cannot become due unless the condition occurs . . . ."). Thus, a party cannot be found in breach of a contractual obligation if a condition precedent to that obligation never occurred. Id. In

this case, Biltmore failed to give proper notice of a request to repurchase. But even if that condition precedent had been met, Biltmore failed to offer the security for the loan in exchange for FNMS's repurchase. As a consequence, Biltmore failed to fulfill yet another condition precedent to FNMS's obligation to repurchase under the Agreement, and thus, FNMS cannot be in breach of the Agreement.

Biltmore is required to offer the security instrument for a loan when it wants that loan repurchased. The existence of such a condition precedent is found in an examination of the ordinary meaning of the term "repurchase."

In Arizona, "agreements which are clear and unambiguous will be enforced according to their terms and the words used will be given their normal ordinary meaning." Korman v. Kieckhefer, 114 Ariz. 127, 129, 559 P.2d 683, 685 (Ct. App. 1976); see Chandler Medical Bldg Partners v. Chandler Dental Group, 175 Ariz. 273, 277, 855 P.2d 787, 791 (Ct. App. 1993) ("[t]he controlling rule of contract interpretation requires that the ordinary meaning of language be given to words when circumstances do not show a different meaning is applicable"). In addition, "court[s] must apply a standard of reasonableness in contract interpretation." Id. (citing Gesina v. General Elec. Co., 162 Ariz. 39, 45, 780 P.2d 1380, 1386 (Ct. App. 1988)). Thus, because the parties agree that the Agreement is clear and unambiguous, the term "repurchase" will be interpreted in accordance with its ordinary and reasonable meaning.

In this case, the ordinary and reasonable meaning of the term "repurchase" necessarily encompasses the idea that a buyer, such as FNMS, must receive in return that which was originally purchased -- in this case, a *secured* loan. In order to determine the ordinary meaning of the term "repurchase," the Court may look to the dictionary definition of the term. See Horton v. Mitchell, 200 Ariz. 523, 527, 29 P.3d 870, 875 (Ct. App. 2001) (reciting the standard of applying ordinary meaning to contract terms and using a dictionary definition to assist in determining such meaning). According to Black's

Law Dictionary, the term "repurchase" means "[t]he act or an instance of buying something back again." Black's Law Dictionary 1330 (8th ed. 2004). It does not mean, as Biltmore suggests, buying something different.

Further, Webster's Dictionary defines the term "purchase" as meaning both "to obtain in exchange for money or its equivalent" and "[a]cquisition through the payment of money or its equivalent . . . ." Webster's II: New Riverside University Dictionary 955 (1994). Thus, by definition, the term "purchase" means that something must be given by a seller in exchange for a payment from a buyer. It does not mean, as Biltmore would apply the term here, that FNMS must cover Biltmore's loss in exchange for nothing. To the contrary, the use of the term "repurchase" in the Agreement means that where, as here, the borrower obtained a secured loan, the security instrument for the loan must be offered in exchange for FNMS's repurchase payment.

Moreover, Biltmore's own Deeds of Trust with the borrower confirm that a transfer of the borrower's note to another -- as would occur in a "repurchase" -- would include a transfer of the security as well. Specifically, Sections 20 of both Deeds of Trust relate to the potential future sale of the loan and state, in pertinent part, that the loan (variously described as the "Note" or "Agreement") or a partial interest therein "*(together with this Security Instrument)* can be sold one or more times without prior notice to Borrower." [SSOF at ¶ 10 (emphasis added)] This language demonstrates that Biltmore itself recognizes that the note and the security for the loan will not be separated in the event of a future transfer of the loan, including a loan "repurchase." As a result, not only does the ordinary meaning of the words confirm that the security must be offered in exchange for any loan repurchase payment under the Agreement, but Biltmore's own loan documents establish that this reasonable interpretation was the very one contemplated.[2]

---

[2] As shown above, the fact that the security for a loan must be returned in a repurchase transaction is clear and unambiguous from the Agreement itself, as well as acknowledged in Biltmore's own documents. Therefore, it is unnecessary to explore the intent of the

### IV. Conclusion

The only reasonable interpretation of the "repurchase" term in the Agreement requires Biltmore to offer the security for a loan before FNMS can be obligated to repurchase the loan. Thus, because Biltmore failed to offer the security for the loan at issue, FNMS's contractual obligation to repurchase the loan never arose. As a result, FNMS has not breached any term of the Agreement, and Biltmore's claim for breach of contract fails.

For all of the foregoing reasons, FNMS respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment and grant FNMS's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 30th day of October, 2007.

>    QUARLES & BRADY LLP
>    Renaissance One
>    Two North Central Avenue
>    Phoenix, AZ  85004-2391
>
>    By  *s/ John Craiger*
>    Deana S. Peck
>    John Craiger
>
>    Attorneys for Defendant
>    First National Mortgage Sources, L.L.C.

---

parties. In any event, FNMS certainly did not intend to sign an Agreement that would have required it to buy back loans without receiving the corresponding security for their repayment. [FNMS CSSOF ¶¶ 12 - 16.]

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants

    Scott H. Zwillinger, Esq.
    Jesse T. Anderson, Esq.
    ZWILLINGER GEORGELOS & GREEK PC
    2425 East Camelback Road, Suite 600
    Phoenix, Arizona 85016
    *Attorneys for Plaintiff*
    docket@zgglawgroup.com


*s/ Mary Willson*