Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Deana S. Peck (Ariz. Bar No. 004243)
*dpeck@quarles.com*
John Craiger (Ariz. Bar No. 021317)
*jcraiger@quarles.com*

Attorneys for Defendant
First National Mortgage Sources, L.L.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE BILTMORE BANK OF ARIZONA, an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST NATIONAL MORTGAGE SOURCES, L.L.C., a foreign limited liability corporation,<br><br>Defendant. | NO. 2:07-CV-936-PHX-MEA<br><br>**DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND CONTROVERTING AND SUPPLEMENTAL STATEMENT OF FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Local Rule 56.1(a), Defendant First National Mortgage Sources, L.L.C. ("FNMS") hereby submits its Statement of Facts in support of its Motion for Summary Judgment, as well as its Controverting and Separate Statement of Facts in opposition to Plaintiff The Biltmore Bank of Arizona's ("Biltmore") Motion for Partial Summary Judgment.

## I. Defendant FNMS's Statement of Facts in Support of its Motion for Summary Judgment

1.     Biltmore is a full-service bank that provides various types of loans to businesses and individuals. <u>See</u> Complaint ("Compl.") at ¶ 8.

2.     FNMS is a wholly-owned subsidiary of First National Bank that acted as a mortgage broker during all times relevant hereto.   <u>See</u> Compl. at ¶ 2; Answer at ¶¶ 2, 10; Plaintiff's Statement of Facts in Support of Motion for Partial Summary Judgment ("Biltmore's SOF") at ¶ 3.

3.     Biltmore and FNMS are parties to a Wholesale Broker Agreement ("Agreement"), which sets forth the terms upon which Biltmore agreed to fund loans originated and submitted to Biltmore by FNMS. <u>See</u> Compl. at ¶ 11, Exh. A; Answer at ¶ 11; Declaration of Breck Brown ("Brown Dec."), attached hereto as Exhibit A, at ¶ 3 and Exh. 1 thereto; Biltmore's SOF at ¶ 4.

4.     Under that Agreement, FNMS acted only as a broker, and did not have any ability to conduct due diligence or underwriting for the loans it brokered to Biltmore. <u>See</u> Brown Dec. at ¶ 4.   FNMS had no authority to either approve or deny loans sought by the applicants it brought to Biltmore. <u>See</u> Compl., Exh. A, § D.

5.     As outlined in the Agreement, in the event Biltmore was required to repurchase a loan originally submitted by FNMS, Biltmore may make a proper demand for repurchase of the loan to FNMS. <u>See</u> Compl., Exh. A, at Section K; Compl. at ¶ 12; Brown Dec. at ¶ 5 and Exh. 1 thereto.

6.      Specifically, Section K of the Agreement is entitled **REPURCHASE** and provides: "Repurchase shall . . . be required of Broker if for any reason a demand for repurchase is made by any agency or investor with respect to any mortgage loan funded by Lender for Broker that is not curable by Broker." <u>See</u> Compl., Exh. A, at Section K; Brown Dec. at ¶ 6 and Exh. 1 thereto.

7.      Section L of the Agreement provides that if Biltmore desires to "request the repurchase of a loan" under the Agreement, Biltmore is to send notice of such a request by Registered or Certified Mail to the following address:   First National Mortgage Sources, LLC, 2809 Hall, Hays, KS 67601.  See Compl., Exh. A, at Section L; Brown Dec. at ¶ 11 and Exh. 1 thereto.

8.      In June 2006, Biltmore approved and funded two loans submitted by FNMS for non-party Karapet Ter-Abraamyan ("Ter-Abraamyan").  See Compl. at ¶¶ 14-16; Answer at ¶¶ 14-16.

9.      These loans were secured by Deeds of Trust encumbering certain property located at 4047 Bridgeview Circle in Las Vegas, Nevada.   See Compl. at ¶ 19; Answer at ¶ 19; Brown Dec. at ¶ 13; Biltmore Deeds of Trust, attached hereto as Exhibits B and C.

10.      Section 20 of the Deed of Trust securing the loan in the amount of $257,250.00 (the "First Loan") relates, in part, to "Sale of Note" and states in part:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower.

Exh. B, § 20, at p. 11.  Similarly, Section 20 of the Deed of Trust securing the loan in the amount of $85,700.00 (the "Second Loan") states in part:

> The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower.

Exh. C, § 20, at p. 10.

11.      Biltmore later sold the First Loan to EMC Mortgage ("EMC"), which subsequently required Biltmore to repurchase the loan.   See Compl. at ¶¶ 21-22; Biltmore's SOF at ¶¶ 8-9.

12.     Sometime on or prior to January 25, 2007, counsel for FNMS received a telephone call from counsel for Biltmore, in which counsel for Biltmore took the position that FNMS was obligated to repurchase the First Loan under the Agreement because Biltmore had been required to repurchase the loan.  <u>See</u> Declaration of Andrew J. Nolan ("Nolan Dec."), attached hereto as Exhibit D, at ¶ 3 and Exh. 1 thereto.

13.     At no time, however, did Biltmore send a notice requesting repurchase of either of the Ter-Abraamyan loans by the means specified in Section L of the Agreement.  Brown Dec. at ¶¶ 11-12.

14.     On February 13, 2007, counsel for Biltmore sent counsel for FNMS an e-mail stating that Biltmore had "cut a deal" with EMC.  <u>See</u> Nolan Dec. at ¶ 4 and Exh. 1 thereto.

15.     On February 26, 2007, counsel for Biltmore sent counsel for FNMS an e-mail explaining that the deal that Biltmore had previously cut with EMC included one "draw back," which was that "we are not getting the houses back to foreclose and sell." <u>See</u> Nolan Dec. at ¶ 5 and Exh. 1 thereto.

16.     Thus, Biltmore was not in a position to transfer back the security for the loan in a repurchase transaction and did not, in fact, offer either Deed of Trust in return for a repurchase.  <u>See</u> Nolan Dec. at ¶ 6; Brown Dec. at ¶ 14.

17.     FNMS did not repurchase the loan at issue from Biltmore.  <u>See</u> Compl. at ¶ 24.

**II.     <u>Defendant FNMS's Controverting and Separate Statement of Facts in Opposition to Plaintiff Biltmore's Motion for Partial Summary Judgment</u>**

1.     The Biltmore Bank of Arizona ("Biltmore") is a federally-insured, full-service bank.  Affidavit of Dave Heuermann ¶ 1 ("Heuermann Aff.").

**RESPONSE TO 1:**  For purposes of Plaintiff's Motion, FNMS does not dispute paragraph 1 of Plaintiff's Statement of Facts ("SOF").

1      2.     Biltmore previously made residential mortgage loans through its wholly-

2   owned division, Axis Mortgage Investments.  Heuermann Aff. ¶ 1.

3      **RESPONSE TO 2**:  For purposes of Plaintiff's Motion, FNMS does not dispute

4   paragraph 2 of Plaintiff's SOF.

5      3.     First National Mortgage Sources, L.L.C. ("FNMS") is a wholly-owned

6   subsidiary of First National Bank who was engaged in the capacity of mortgage broker

7   during the relevant timeframe.  Answer at ¶ 9-10, Heuermann Aff. ¶ 4.

8      **RESPONSE TO 3**:  For purposes of Plaintiff's Motion, FNMS does not dispute

9   paragraph 3 of Plaintiff's SOF.

10      4.     Biltmore and FNMS are parties to a "Wholesale Broker Agreement" (the

11   "Agreement"), which sets forth the terms upon which Biltmore agreed to fund loans

12   originated and submitted to Biltmore by FNMS.  Heuermann Aff. ¶ 5 and Exhibit 1 to

13   Heuermann Aff.

14      **RESPONSE TO 4**:  For purposes of Plaintiff's Motion, FNMS does not dispute

15   paragraph 4 of Plaintiff's SOF.

16      5.     The Agreement provides that loans funded under the Agreement would be

17   "saleable on the secondary market."  Heuermann Aff. ¶ 6, Exh. 1.

18      **RESPONSE TO 5**:  Paragraph 5 of Plaintiff's SOF is disputed.  The paragraph

19   mischaracterizes the language in the Agreement.  The Agreement does not expressly

20   provide that loans funded under the Agreement would be saleable on the secondary

21   market.  The quoted language in Paragraph 5 of Plaintiff's SOF is merely part of a

22   provision setting forth FNMS's responsibilities under the Agreement.  In full, the

23   relevant provision reads that "Broker will, at Broker's sole expense . . . (3) provide any

24   such information that Lender may request to ensure that all loans are saleable on the

25   secondary market."  Thus, this provision does not expressly "provide[] that loans funded

26   under the Agreement would be 'saleable on the secondary market.'"  Further, no other

1 provision in the Agreement expressly states such a term.

2     FNMS does not dispute the propriety of Biltmore's sale of its loans on the

3 secondary market; FNMS disputes only that the Agreement expressly provides such a

4 term.

5     6.     Section K of the Agreement is titled "REPURCHASE" and sets forth the

6 following:

7         Repurchase shall be required if Lender determines, at any
         time, that any representation made by Broker with respect to

8         any mortgage loan application submitted to Lender was
         untrue when made or any warranty or term hereof has been

9         breached. ***Repurchase shall also be required of Broker if
         for any reason a demand for repurchase is made by any***

10        ***agency or investor with respect to any mortgage loan
         funded by Lender for Broker that is not curable by Broker.***

11        Broker shall repurchase within 15 days of notice any loan
         funded or purchased by Lender hereunder for an amount

12        equal to the sum of, at the time of repurchase, (a) the unpaid
         principal balance of the loan plus the accrued interest on the

13        loan, (b) the amount of any mortgage broker compensation
         paid to Broker by Lender at the time the loan funded, (c) the

14        aggregate amount of any advances made by Lender for the
         account of the mortgagor and interest thereon at the interest

15        rate set forth in the promissory note, and (d) any attorney's
         fees, legal expenses, court costs, etc.

16

17 Heuermann Aff. ¶ 7 & Exh. 1 at Section K (emphasis added).

18     **RESPONSE TO 6:**  For purposes of Plaintiff's Motion, FNMS does not dispute

19 paragraph 6 of Plaintiff's SOF.

20     7.     In or about May or June 2006 FNMS requested that Biltmore fund a

21 residential loan to FNMS's borrower, Karapet Ter-Abraamyan ("Ter-Abraamyan").  On

22 or about June 2, 2006, Biltmore approved and funded two loans to Abraamyan totaling

23 $342,950 consisting of a First Loan of $257,250 ("First Loan") and a Second Loan of

24 $85,700 ("Second Loan") to non-party Ter-Abraamyan.  Heuermann Aff. ¶ 8 & Exh. 2.

25     **RESPONSE TO 7:**  For purposes of Plaintiff's Motion, FNMS does not dispute

26 that in or about May or June 2006, FNMS requested that Biltmore fund a residential loan

to Karapet Ter-Abraamyan. Further, for purposes of Plaintiff's Motion, FNMS does not dispute that on or about June 2, 2006, Biltmore approved and funded two loans to Karapet Ter-Abraamyan totaling $342,950, consisting of a First Loan of $257,250 and a Second Loan of $85,700 to non-party Ter-Abraamyan. FNMS affirmatively states, however, that Exhibit 2 of Dave Heuermann's affidavit does not, as asserted, include true and correct copies of the notes memorializing the loans at issue. It contains a copy of only of the note entered into in connection with the First Loan.

8. As contemplated in the Agreement, Biltmore thereafter sold the First Loan to non-party EMC Mortgage ("EMC"). Affidavit of Paige Mulhollan ¶ 4, attached hereto as Exhibit B ("Mulhollan Aff.").

**RESPONSE TO 8:** Paragraph 8 of Plaintiff's SOF is disputed. FNMS does not dispute that Biltmore sold the First Loan to non-party EMC Mortgage ("EMC"). FNMS does dispute the allegation that such sale was "contemplated in the Agreement". As stated in FNMS's Response to Paragraph 5 of Plaintiff's SOF, the Agreement does not expressly state that loans funded under the Agreement would be saleable on the secondary market.

9. EMC subsequently demanded that Biltmore repurchase the First Loan because Ter-Abraamyan defaulted on the loan. Mulhollan Aff. ¶ 5.

**RESPONSE TO 9:** For purposes of Plaintiff's Motion, FNMS does not dispute paragraph 9 of Plaintiff's SOF.

10. Biltmore in turn requested that FNMS repurchase the Loans from Biltmore, as FNMS is required to do under the Agreement. Mulhollan Aff. ¶ 6.

**RESPONSE TO 10:** Paragraph 10 of Plaintiff's SOF is disputed. First, Biltmore did not give proper notice of any request to repurchase by the means specified in the Agreement. See Compl., Exh. A, § L; Brown Dec. at ¶ 11 - 12. Second, the Complaint alleges that Biltmore requested that FNMS repurchase only the First Loan,

not both loans.  Compl., ¶ 23.  Third, even if Biltmore had made a request for repurchase that was proper in other respects, FNMS was not required to repurchase either loan under the Agreement, due to Biltmore's failure to offer the security instrument for the loan in exchange for FNMS's repurchase.  <u>See</u> Defendant FNMS's Statement of Facts in Support of its Motion for Summary Judgment, <u>supra</u>, at ¶¶ 9 - 10, 14 - 16.  Fourth, paragraph 10 of Plaintiff's SOF is not supported by competent evidence and, therefore, may not be considered by the Court in deciding the Motion.  The cited paragraph 6 of the Mulhollan Affidavit is not evidence that FNMS is required under the Agreement to repurchase the loan from Biltmore, but is merely argument.  FNMS therefore disputes and objects to paragraph 10 of Plaintiff's SOF because it consists of impermissible commentary, conclusions and argument, and is unsupported by citations to admissible evidence.

11.    FNMS has refused Biltmore's request.  Mulhollan Aff. ¶ 7.

**RESPONSE TO 11:**    Paragraph 11 of Plaintiff's SOF is disputed.  FNMS disputes that Biltmore made a proper request for repurchase.  <u>See</u> Brown Dec. ¶¶ 7, 11 - 12.  However, for purposes of Plaintiff's Motion, FNMS does not dispute that, if a request for repurchase had been made, FNMS would have refused the request due to Biltmore's failure to offer the security instrument for the loan(s) to be repurchased.

**III.    <u>Defendant FNMS's Supplemental Statement of Facts in Opposition to Plaintiff Biltmore's Motion for Partial Summary Judgment</u>**

12.    Under the Agreement, FNMS acted only as a broker and did not have any duty to conduct due diligence or underwriting for the loans it brokered to Biltmore.  Brown Dec. at ¶ 4.  FNMS had no authority to either approve or deny loans sought by the applicants it brought to Biltmore.  <u>See</u> Compl., Exh. A, § D.

13.     In entering into the Agreement, FNMS did not understand that it would be required to repurchase loans from Biltmore even if Biltmore did not return the security instrument securing the loan to be repurchased.  Brown Dec. at ¶ 7.

14.     In the lending industry, it is standard practice for a seller of a loan to transfer to the buyer both the note evidencing a loan and the security instrument securing the loan.  Brown Dec. at ¶ 8.

15.     If Biltmore assumed it would be able to force FNMS to repurchase loans under the Agreement without offering to return the security instrument for those loans to FNMS, FNMS was not aware of Biltmore's assumption that it could do so.  Brown Dec. ¶ at 9.

16.     If, at the time the Agreement was executed, FNMS had known that Biltmore intended for the Agreement to require FNMS to repurchase loans without also receiving the corresponding security instrument in the exchange, FNMS would not have entered into the Agreement.  Brown Dec. at ¶ 10.

DATED this 30th day of October, 2007.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By   *s/ John Craiger*
Deana S. Peck
John Craiger

Attorneys for Defendant
First National Mortgage Sources, L.L.C.

# CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants

Scott H. Zwillinger, Esq.
Jesse T. Anderson, Esq.
ZWILLINGER GEORGELOS & GREEK PC
2425 East Camelback Road, Suite 600
Phoenix, Arizona 85016
*Attorneys for Plaintiff*
docket@zgglawgroup.com

*s/ Mary Willson*