Scott H. Zwillinger (019645)
Laura A. Freeman (021331)
**ZWILLINGER GEORGELOS & GREEK** PC
2425 E. Camelback Rd., Suite 600
Phoenix, Arizona 85016
(602) 224-7888
(602) 224-7889 (Fax)
E-mail:  docket@zgglawgroup.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE BILTMORE BANK OF ARIZONA, an Arizona corporation, <br><br> Plaintiff, <br><br> v. <br><br> FIRST NATIONAL MORTGAGE SOURCES, L.L.C., a foreign limited liability corporation, <br><br> Defendants. | No. 2:07-cv-00936-MEA <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> **(Oral Argument Requested)** |

The Wholesale Broker Agreement (the "Agreement") between Defendant First National Mortgage Sources ("FNMS" or "Defendant") and The Biltmore Bank of Arizona ("Biltmore" or "Plaintiff") is clear and unambiguous.  Pursuant to the Agreement, Defendant agreed to purchase any loans Biltmore made to FNMS's clients that Biltmore was required to repurchase from its investors.  Despite Biltmore's proper and timely request for repurchase in this case, Defendant argues that it was justified in refusing Biltmore's request due to Biltmore's alleged failure:  (1) to provide proper notice under the Agreement, and (2) to return the security on the underlying loan.  Defendant's position is without factual or legal support, and indeed ignores

1

the undisputed evidence in this case which demonstrates that Biltmore's request for repurchase was proper. Accordingly, FNMS's cross-motion for summary judgment should be denied and summary judgment entered in favor of Biltmore.

## I. THE AGREEMENT SHOULD BE ENFORCED PURSUANT TO ITS TERMS

It is undisputed that Biltmore and Defendant entered into the Agreement, pursuant to which Biltmore agreed to fund mortgage loans to FNMS customers. One such customer, Karapet Ter-Abraamyan ("Ter-Abraamyan"), obtained two loans from Biltmore totaling $342,950 to purchase a house (the "House"). As contemplated by the Agreement, Biltmore sold one of the two loans (the "Loan") and its interest in the corresponding deed of trust (the "Deed of Trust") to an investor, EMC, Inc. ("EMC"). Thereafter, Biltmore was required to repurchase the Loan from EMC because Ter-Abraamayan immediately defaulted on the monthly obligation due under the terms of the Loan. Pursuant to the Agreement, Defendant was then obligated to repurchase the Loan from Biltmore. As the Agreement states: "if for any reason a demand for repurchase is made by any agency or investor with respect to any mortgage loan funded by Lender for Broker that is not curable by Broker." Despite this clear and unambiguous language, FNMS refused to repurchase the Loan from Biltmore.

Where a contract's language is clear and unambiguous, a court should give it effect as written. DeCarlo v. MCSA, Inc., 163 Ariz. 23, 25, 785 P.2d 592, 594 (App. 1988) ("[A] contract that is unambiguous on its face must be construed according to the plain and ordinary meaning of its terms."). Indeed, ensuring that contracts are enforced pursuant to their terms, and that parties meet their obligations, is an essential function of the court system. As one court has stated: "Only when courts ensure that promises create obligations do promises have real meaning...[because] 'Commitments to take or refrain from certain actions are indispensable elements in most forms of interaction and exchange'" Arok Constr. Co. v. Indian Constr. Serv., 174 Ariz. 291, 296, 848 P.2d 870, 875 (App. 1993).

Here, the Agreement is unequivocal and it should be enforced pursuant to its terms. Defendant's refusal to repurchase the Loan constitutes a breach of the Agreement and entitles Biltmore to the entry of summary judgment. Nothing in Defendant's response or cross motion

2

for summary judgment disturbs this result. Instead, Defendant offers nothing more than red herrings, unsupported by fact or law, which neither justify nor excuse Defendant's breach of the Agreement. Specifically, Defendant argues that its duty to repurchase never arose because 1) Biltmore failed to provide proper notice of the obligation to repurchase under the Agreement and 2) Biltmore improperly mitigated its damages by releasing its interest in the Deed of Trust in exchange for a 70% discount in the repurchase amount of the Loan. The undisputed facts, however, show that Biltmore provided notice to FNMS via its counsel, and acted properly in attempting to mitigate its potential damages.

### A. Biltmore Provided Proper Notice Under the Agreement.

Defendant concedes, as it must, that it was aware of Biltmore's demand to repurchase the Loan, as a result of counsel for both parties exchanging correspondence and discussing Defendant's obligation to repurchase. Response at pp. 4-5. However, in a lawyer's salute to technicalities, Defendant argues that Biltmore did not give "proper" notice under the Agreement when it sent notice to its counsel rather than via registered or certified mail to FNMS's Hays, Kansas address. Response at p. 4. This argument is tortured at best.

The undisputed evidence shows that on January 25, 2007, Biltmore's counsel requested in writing that Defendant repurchase the Loan. Defendant's Statement of Facts ¶ 12; Plaintiff's Supplemental Statement of Facts (SSOF) ¶ 1. Indeed, the e-mail to Defendant's counsel specifically references an earlier discussion concerning the repurchase of a prior loan and expressly provides "[d]ue to an early payment default, Biltmore has repurchased the loan and FNMS is now obligated to purchase the loan from Biltmore pursuant to the parties Wholesale Broker Agreement." SSOF ¶ 5. Incredibly, Defendant argues that this is somehow inadequate because it was communicated to counsel, not to Defendant directly. Such an argument is contrary to established law.

In no uncertain terms, courts have consistently held that "notice provisions in a commercial contract should not be construed pedantically." See RBFC One, LLC v. Zeeks, Inc., 367 F. Supp. 2d 604, 617 (S.D.N.Y. 2005); see also Contemporary Mission, Inc. v. Famous Music, Inc., 557 F.2d 918, 925 (2d Cir. 1977) (declining to construe a notice provision

3

"as if it were a common law pleading requirement under which every slip would be fatal"). More importantly, it is well-settled that notice to counsel is notice to a party. See Belton Industries, Inc. v. United States, 6 F.3d 756, 761 (Fed. Cir. 1993) ("[n]otice to counsel is notice to the client unless the applicable notice provision expressly requires otherwise"). The United States Supreme Court has echoed this sentiment, ruling that "[u]nder our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 92-93 (1990).

Here, Defendant admits it had actual notice of the demand for repurchase through its counsel. Defendant's effort to escape contractual liability by arguing that Biltmore should have duplicated its efforts and mailed notice directly to its Kansas address as well as its counsel's office is without merit and should be rejected.

**B.**     **Biltmore Was Always In a Position to Transfer the Security for the Loan to FNMS.**

Defendant also argues that its duty to repurchase was never triggered because Biltmore supposedly "failed to offer the security for the loan" (Response at p. 7) and "was not in a position to transfer back the security for the loan" (Response at p. 5). Such an argument is equally belied by the record. As counsel for Biltmore wrote to Defendant's counsel on January 25, 2007:

> As we discussed, attached please find the HUD-1 and various other documents demonstrating that FNMS originated a loan to an individual, Karapet Ter-Abraamyan, that Biltmore funded and sold on the secondary market. Due to an early payment default, Biltmore has repurchased the loan and FNMS is now obligated to purchase the loan from Biltmore pursuant to the parties Wholesale Broker Agreement. Per your request, I am overnighting the loan file to you this afternoon.
>
> After you have had a chance to discuss the matter with your client, please give me a call. Please note, my client is not interested in the arrangement we reached on the Papaian loan. Instead, we would simply like FNMS to purchase the loan from Biltmore pursuant to the terms of the Wholesale Broker Agreement.

SSOF ¶ 13.

4

In other words, despite Defendant's argument to the contrary, Biltmore did in fact demand that Defendant repurchase the Loan ***and the corresponding deed of trust***. Only when Defendant failed to respond did Biltmore, in an effort to mitigate its damages, negotiate a settlement with EMC in regard to the Loan and various other loans it was obligated to repurchase. SSOF ¶ 13; see e.g., Ricketts v. Adamson, 483 U.S. 1, 22 (1987) (general duty to mitigate); Thrifty-Tel, Inc. v. Bezenek, 46 Cal.App.4th 1559, 1568 (1996) (plaintiff has a duty to mitigate damages and cannot recover losses that could have been avoided through reasonable efforts). In that settlement, EMC agreed to grant Biltmore a 70% discount in the amount Biltmore owed EMC for each of the loans it was to repurchase, including the Loan, in exchange for Biltmore releasing its interest in the various deeds of trust. Defendant now claims that Biltmore's prudent and required conduct somehow discharges Defendant's duty of performance. Of course, Defendant's argument fails on its face, because Biltmore did in fact demand that it repurchase the Loan and the Deed of Trust, as set forth above.

Moreover, while Biltmore reached an agreement with EMC, it was always possible to exclude the Loan and the Deed of Trust from Biltmore's settlement with EMC. SSOF ¶¶ 11-12. However, ***FNMS never requested that Biltmore deliver the deed of trust for the House or otherwise indicated its refusal to repurchase the loan was based on Biltmore's alleged failure to provide the security.*** SSOF ¶¶ 9, 12. In fact, communications between counsel, while showing an exchange of documents, including the entire Ter-Abraamyan loan file, are completely devoid of any request whatsoever by Defendant that Biltmore tender the Deed of Trust *prior* to Defendant agreeing to repurchase.[1] SSOF ¶ 1. In other words, Defendant's argument is nothing more than a lawyer-contrived excuse designed to somehow avoid summary judgment.

Regardless, Biltmore was always prepared to tender security for the underlying loan and would have done so, as is its common practice, had Defendant agreed to repurchase as it was

---

[1] While FNMS argues that the Agreement required Biltmore to offer security for the loan *before* it was obligated to repurchase, there is no language in the Agreement to support this reading.

obligated to do under the Agreement. SSOF ¶ 7, 10-12. While Defendant attempts to spin the facts to make the Court believe Biltmore was asking FNMS to purchase "only the bad half" of the loan, this statement is belied by the undisputed facts.

Indeed, even after Biltmore's settlement with EMC, Biltmore could have provided FNMS the security for the Loan. SSOF ¶ 12. The fact remains that Defendant never asked. SSOF ¶¶ 9, 12. Biltmore, however, was always in a position to provide the Deed of Trust and underlying note to Defendant, had it requested it. SSOF ¶ 12-13. Although the terms of Biltmore's settlement with EMC included a provision that EMC would not return the homes, Biltmore could have excluded a loan and corresponding deed of trust if a broker requested it. SSOF ¶¶ 13-14. Such an arrangement would have likely easily been reached because, in light of the nationwide residential real estate collapse, EMC would have jumped at the opportunity to recover its damages in full, rather than accept a settlement of only 30% of the Loan amount. SSOF ¶ 14. Indeed, FNMS's argument that it preferred to pay 100% on the defaulted loan as opposed to indemnifying Biltmore for only 30% of its potential liability is absurd on its face. Instead, it is obvious that Defendant's contrived argument regarding the alleged failure to provide the security is nothing more than Defendant's post-hoc litigation strategy to avoid its obligations under the Agreement and, accordingly, should be rejected by the Court.

## II.    CONCLUSION

The undisputed facts in this case establish that Defendant agreed that it would purchase from Plaintiff any loans Plaintiff made to Defendant's clients that Plaintiff was required to repurchase. Plaintiff made a timely and proper for demand for repurchase, which was rejected by Defendant. As such, Defendant has breached the parties' Agreement, and Plaintiff is entitled to summary judgment. Defendant's response does not establish the presence of any genuine issues of material fact, and its cross motion for summary judgment equally fails. Biltmore is therefore entitled to a ruling that, as a matter of law, Defendant is obligated under the Agreement to repurchase the Ter-Abraamyan loan and that Defendant is in breach of that obligation, leaving for determination only Biltmore's incurred damages and entitlement to attorneys' fees.

RESPECTFULLY SUBMITTED this 17th day of December 2007.

**ZWILLINGER GEORGELOS & GREEK** PC

By:     s/ Laura A. Freeman
Scott H. Zwillinger
Laura A. Freeman
2425 E. Camelback Rd., Suite 600
Phoenix, Arizona 85016
Attorneys for the Defendants

ORIGINAL e-filed, and a COPY mailed
this 17th day of December, 2007, to:

Deana S. Peck, Esq
John S. Craiger
Quarles & Brady LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
Attorneys for Defendant First National
Mortgage Sources, L.L.C.

s/ Carol E. Merritt
::ODMA\PCDOCS\ZGLAWDM\979984\2

7