**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Biltmore Bank of Arizona, an Arizona corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>First National Mortgage Sources, L.L.C., a foreign limited liability corporation,<br><br>          Defendant. | No. CV-07-936-PHX-LOA<br><br>ORDER |

Pending for ruling is The Biltmore Bank of Arizona's ("Plaintiff" or "the Bank") Motion for Partial Summary Judgment and First National Mortgage Sources, L.L.C.'s ("Defendant" or "the Broker") Cross-Motion for Summary Judgment.  (docket # 15 and # 19)  Since the Bank's request for oral argument would not aid the court's decisional process, the  request will be denied. *Mahon v. Credit Bur. of Placer County, Inc*., 171 F.3d 1197, 1200 (9th Cir.1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

Each party argues that the other party violated their Wholesale Broker Agreement, that there are no genuine disputes of material fact, and that each party is entitled to summary judgment against the other as a matter of law. After considering all the briefing submitted on the motions, including the various statements of fact, and the relevant case law,

1 the Court concludes that genuine issues of disputed material fact exist for resolution by the
2 trier of fact. Each party's dispositive motion will be denied.

## I. Jurisdiction

This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) and (c) as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the adverse parties are of diverse citizenship. (docket # 9 at 3 - 4) The Bank is an Arizona corporation with its principal place of business in Maricopa County, Arizona. *Id.*; *Indus. Tectonics v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("[A] corporation is a citizen of any state where it is incorporated and of the state of its principal place of business."). Defendant Broker represents that it is a limited liability company organized under the laws of the State of Kansas, with its principal place of business in Hays, Kansas. (docket # 9 at 3) For purposes of diversity jurisdiction, limited liability companies are analogized to partnerships, which take the citizenship of every general and limited partner. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citing *Carden v. Arkoma Associates*, 494 U.S. 185 (1990); *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003).

Based upon the February 25, 2008 declaration of Robert Readle, General Manager of the Broker, "FNMS is wholly owned by one member and one company: (1) Robert Readle, a citizen of the State of Kansas who is also domiciled in the State of Kansas and (2) FNMS Home Loans, Inc., which is incorporated in the State of Kansas with its principal place of business in Overland Park, Kansas. FNMS has no general or limited partners." (docket # 33, Exh. A, ¶¶ 4 - 8) Thus, the Court finds that because the Broker is wholly owned by a business and individual that are citizens of Kansas, and the Bank is a citizen of Arizona, complete diversity exists between the parties in this lawsuit.

Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a). All parties have previously consented in writing to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (docket # 12)

///

- 2 -

**II. Background**

The parties do not dispute most of the material facts precipitating this lawsuit. The Bank, through its wholly-owned division, Axis Mortgage Investments, funded residential loans for Defendant Broker, a mortgage broker and wholly-owned subsidiary of First National Bank. (PSOF,[1] ¶¶ 2-3) In May or June 2006, the Broker requested that the Bank fund a residential loan for the Broker's borrower, Karapet Ter-Abraamyan ("Ter-Abraamyan"), a non-party. On or about June 2, 2006, the Bank approved and funded two loans for Ter-Abraamyan totaling $342,950, consisting of a first loan of $257,250 ("first loan") and a second loan of $85,700 ("second loan"). (PSOF, ¶ 7; DSOF,[2] ¶ 7) Both loans were secured by a deed of trust duly recorded on Ter-Abraamyan's residence located at 4047 Bridgeview Circle, Las Vegas, Nevada. (Complaint, ¶ 19; DSOF, ¶ 9)

On August 8, 2005, the parties entered into a contract, entitled "Wholesale Broker Agreement" (the "Agreement"), which sets forth the terms upon which the Bank agreed to fund loans originated and submitted by the Broker to the Bank. (Complaint, ¶ 11; PSOF ¶ 4; DSOF, ¶ 4) The first loan consisted of the Adjustable Rate Note and Deed of Trust, called the "Security Instrument," which secured the indebtedness on the subject residence. (PSOF, Exh. 1; docket # 16 at 5-9; DSOF, ¶ 10, Exh. B, ¶ 20) Both parties acknowledge that after Ter-Abraamyan's first loan was funded by the Bank, it was appropriately sold by the Bank on the secondary market to non-party EMC Mortgage ("EMC"). (PSOF ¶¶ 5, 8; DSOF, ¶ 5[3])

After EMC purchased the first loan from the Bank, Ter-Abraamyan defaulted

---

[1] Plaintiff's Statement of Facts ("PSOF"); docket # 16 at 2.

[2] Defendant's Statement of Facts and Controverting and Supplemental Statement of Facts ("DSOF"); docket # 20 at 6.

[3] The Broker denies the Bank's allegation that the Agreement expressly provides, or contemplates inferentially, that loans funded under the Agreement would be "saleable on the secondary market." (DSOF,¶¶ 5, 8)  Because the Broker, however, does not dispute the propriety of selling the first loan, this is an immaterial disputed fact.

- 3 -

on both loans. (PSOF, ¶ 9; DSOF, ¶ 9) In early January of 2007, EMC demanded the Bank repurchase the first loan. (Complaint, ¶ 22; docket # 1; PSSOF,[4] ¶ 3) The Bank and EMC settled their dispute over the first loan by the Bank's repurchase of it. The Bank paid "EMC 30% of the total amount of loans for which EMC notified [the Bank] were in default. . . The settlement agreement included a provision that EMC would not return the homes." (PSSOF, ¶ 13) In other words, per its voluntary settlement with EMC, the Bank allowed EMC to keep both the deed of trust securing the first loan and the residence itself.

The Bank claims that per its Agreement with the Broker, the Bank requested that the Broker repurchase the first loan.[5] (PSOF, ¶ 10; DSOF, ¶¶ 12 and 14) The Bank contends that after the Broker refused to repurchase the loan, the Bank successfully negotiated a settlement with EMC in an effort to mitigate its damages and, as a result, seeks $77,175.00 (30% of the total damages) from the Broker, plus its costs and reasonable attorneys' fees. The Bank asserts a single cause of action for breach of contract, seeking damages for the Broker's alleged breach of the Agreement. (docket # 9 at 2, ¶ II A.)

The Broker denies it was required to repurchase the loan under the Agreement with the Bank "due to the non-occurrence of two conditions precedent to [the Broker's] repurchase obligation: (1) the Bank's failure to transfer the security instrument (deed of trust) for the loan to the Broker in exchange for the Broker's repurchase of the loan, and (2) the Bank's failure to properly comply with the Agreement's notice-to-repurchase provision. (docket # 29 at 2-3) Specifically, the Broker contends that the Agreement's requirement for Broker to repurchase the loan is conditioned upon the return of the original note and security which is implied in the term "repurchase" and the failure to perform this condition precedent justifies Broker's refusal to perform, i.e., refusal to pay the Bank $77,175.00. (docket # 9

---

[4] Plaintiff's Supplemental Statement of Facts ("PSSOF"); docket # 27.

[5] As the Broker points out in its briefing, the Complaint only alleges that the Bank requested the Broker to repurchase the first loan. The Bank's dispositive motion, however, attempts to expand the Bank's claim by seeking summary judgment on both the first and second loans. Because the Complaint has not been amended and the amendment deadline of October 15, 2007 has passed, this order will address the first loan only. (Rule 16 scheduling order, ¶ D; docket # 11)

1 at 2-3) The Broker also claims that Bank counsel's telephone call and a January 25, 2007
2 email[6] to Broker's outside counsel to repurchase the loan was not "[p]roper notice" under the
3 Agreement and, therefore, failed to meet "a condition precedent to any obligation [the
4 Broker] had to repurchase the Ter-Abraamyan loan." *Id*.

5 This lawsuit centers around two sections of the parties' Agreement: Section K
6 and Section L. Section K of the Agreement is titled "REPURCHASE" and sets forth the
7 following:

> Repurchase shall be required if Lender determines, at any time, that any representation made by Broker with respect to any mortgage loan application submitted to Lender was untrue when made or any warranty or term hereof has been breached. **Repurchase shall also be required of Broker if for any reason a demand for repurchase is made by any agency or investor with respect to any mortgage loan funded by Lender for Broker that is not curable by Broker. Broker shall repurchase within 15 days of notice** any loan funded or purchased by Lender hereunder for an amount equal to the sum of, at the time of repurchase, (a) the unpaid principal balance of the loan plus the accrued interest on the loan, (b) the amount of any mortgage broker compensation paid to Broker by Lender at the time the loan funded, (c) the aggregate amount of any advances made by Lender for the account of the mortgagor and interest thereon at the interest rate set forth in the promissory note, and (d) any attorney's fees, legal expenses, court costs, etc.

18 (PSOF, ¶ 6, Heuermann Aff. ¶ 7 & Exh. 1 at Section K; DSOF, ¶ 6 (emphasis added).

19 Section L of the Agreement is titled "DELIVERY OF NOTICES,
20 DISCLOSURES & CORRESPONDENCE" and provides:

> To the extent allowable by law, delivery of notices, disclosures and correspondence in the normal course of business between the two parties shall be deemed to have been delivered if sent by either U. S. Mail or electronic mail to the addresses listed below:

---

[6] The January 25, 2007 e-mail between [the Bank's] counsel, Scott Zwillinger, and [the Broker's] counsel, Andy Nolan, provides: "[d]ue to an early payment default, [the Bank] has repurchased the loan and [the Broker] is now obligated to purchase the loan from [the Bank] pursuant to the parties Wholesale Broker Agreement." This same e-mail also states that [the Bank] was not interested in the same settlement reached [on a different loan, called] the Papaian loan and, instead, requested that [the Broker] repurchase the [Ter-Abraamyan] loan. (PSSOF, ¶ 5, Exh. B, Gaia Aff. ¶ 6)

- 5 -

| BROKER: | LENDER: |
|---|---|
| U. S. Mail Address: | U. S. Mail Address: |
| First National Mortgage Sources, LLC<br>2809 Hall<br>Hays, KS 67601 | Axis Mortgage & Investments<br>1201 S. AlmaSchool Rd., Suite 3700<br>Mesa AZ 85210<br>Attn: Broker Approval Coordinator |
| Electronic Mail Address: | Electronic Mail Address: |
| Brandieg@mortgagesourcescorp.com | wholesale@axismtg.com |

In the event Lender desires to . . . request the repurchase of a loan, request reimbursement of . . . other such sums as Lender may have rights under this Agreement to request, or either party wishes to assert a breach of this Agreement by the other party, such correspondence shall be deemed to have been delivered if sent by Registered or Certified U. S. Mail to the address listed above.

(PSOF, ¶ 6; Heuermann Aff., Exh. 1 at Section L)

### III.  Legal Standard

A district court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element

1 essential to that party's case, and on which that party will bear the burden of proof at trial."
2 *Id.* at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving
3 party need not disprove matters on which the opponent has the burden of proof at trial.
4 *Celotex*, 477 U.S. at 323.

5         The party opposing summary judgment "may not rest upon the mere allegations
6 or denials of [the party's] pleadings, but. . . must set forth specific facts showing that there
7 is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith*
8 *Radio Corp.*, 475 U.S. 574, 586-87 (1986). *Brinson v. Lind Rose Joint Venture*, 53 F.3d
9 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence
10 favoring the nonmoving party. If the evidence is merely colorable or is not significantly
11 probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. However,
12 "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be
13 drawn in his [or her] favor." *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
14 158-59 (1970)).

15         Whatever facts which may establish a genuine issue of fact must *both* be in the
16 district court's file and set forth in the response. *Carmen v. San Francisco Unified School*
17 *District*, 237 F.3d 1026, 1029 (9th Cir. 2001). The trial court

> may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

*Id.* at 1031.

**IV. Applicable Law**

**A. Choice of Law**

        A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005); *Klaxon*

*Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, this Court will apply Arizona's choice-of-law rules. Generally, Arizona courts apply the Restatement to determine the applicable law in a contract action. *Swanson v. The Image Bank, Inc.*, 206 Ariz. 264, 77 P.3d 439, 441 (Ariz. 2003); *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz.1992). If a contract includes a specific choice-of-law provision, the court must determine whether that choice is "valid and effective" under *Restatement (Second) of Conflict of Laws*, § 187; *Swanson*, 841 P.2d at 203. Choice-of-law issues are questions of law. *Id.* (citation omitted).

Section 187, *Restatement (Second) of Conflict of Laws*, provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Restatement (Second) of Conflict of Laws*, § 187; *Magellan Real Estate Inv. Trust v. Losch*, 109 F.Supp.2d 1144, 1155 (D. Ariz. 2000).

The parties' Wholesale Broker Agreement[7] contains a clear and explicit choice-of-law provision. Paragraph M provides "that this Agreement shall be governed by, construed and enforced in accordance with the laws of the state of Arizona." (PSOF; Exh

---

[7] Plaintiff's Statement of Facts ("PSOF"), ¶ 4, Exhibit ("Exh) A1, docket # 16 at 2; Defendant's Statement of Facts and Controverting and Supplemental Statement of Facts ("DSOF"), ¶ 3, Exh A1, docket # 20 at 2.

A1, ¶ M at 5)  Although they do not address the choice-of-law issue in their briefings, both parties cite applicable Arizona law.  Neither party argues that non-Arizona law is controlling. The Court finds that the Bank and the subject Agreement have a substantial connection to Arizona and applying Arizona law herein is not contrary to Arizona's fundamental public policy to enforce contractual obligations freely entered by private, business entities. *Westwood Homeowners Ass'n v. Tenhoff*, 155 Ariz. 229, 231, 745 P.2d 976, 978 (Ariz. Ct. App. 1987). The Court concludes that the parties' choice-of-law provision is valid and effective and, therefore, Arizona law controls this litigation.

## B.  Arizona Law on Contracts

### 1).  General Contract Principles

In an action for breach of contract, the plaintiff has the burden of proving the existence of a contract, its breach and the resulting damages. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 171, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004); *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 387 P.2d 235 (1963). When a party agrees to perform in a certain manner upon adequate consideration and fails to keep a material promise in a contract, that party is liable to the performing party for any damages sustained as a result of such failure to perform.  *Graham v. Asbury*, 112 Ariz. 184, 540 P.2d 656, 657 (Ariz. 1975); *Howell v. Midway Holdings, Inc*., 362 F.Supp.2d 1158, 1161 (D. Ariz. 2005).  In Arizona, if one party to a contract commits a material breach of the contract, the other party to the contract is excused from performance. Rev. Ariz. Jury Instr. (Civil) (Contract 9), at 137 (4th ed. 2005) (citing *Restatement (Second) of Contracts* § 241(1981)). A nonmaterial breach does not excuse performance by the other party, but may permit a claim for damages. *Id.* Under Arizona law, a material breach occurs when (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions or (2) fails to do something required by the contract which is so important to the contract that the breach defeats the very purpose of the contract. *Id*.; *Ry-Tan Const., Inc. v. Washington Elementary School Dist. No. 6*, 208 Ariz. 379, 400, 93 P.3d 1095, 1116 (Ariz. Ct. App. 2004), *vacated on other grounds*, / / /

210 Ariz. 419, 111 P.3d 1019 (Ariz. 2005). Section 241 of the *Restatement (Second) of Contracts* § identifies five factors to consider to determine the materiality of a breach:

> (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

The Restatement (Second) of Contracts § 241 (1981); *Foundation Development Corp. v. Loehman's, Inc.*, 163 Ariz. 438, 446, 788 P.2d 1189, 1197 (Ariz. 1990).

It is basic Arizona law that the terms of a contract must be established with sufficient specificity that the obligations involved may be ascertained. *Savoca Masonry Company, Inc. v. Homes and Son Construction Company, Inc.*, 112 Ariz. 392, 542 P.2d 817, 819 (1975). The terms of a contract, however, may be expressly stated or may be inferred from the statements or conduct of the parties. *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 381, 710 P.2d 1025, 1036 (1985). Under Arizona law, "a professional custom within a particular geographic area may be used to establish the terms of a contract." *Angle v. Mario Builders, Inc.*, 128 Ariz. 396, 400, 626 P.2d 126, 131 (Ariz. 1981) (citation omitted). "The general rule is that the determination whether in a particular case a promise should be implied in fact is a question of fact." *Wagenseller*, 710 P.2d at 1038. Where reasonable minds may draw different conclusions or inferences from undisputed evidentiary facts, a question of fact is presented." *Id.* Whether a party has breached a contract, whether a custom is so well established as to justify an expectation that it will be observed with

1 respect to a particular transaction and whether that breach is material are questions of fact 2 for the trier of fact. *Jeski v. American Express Co.*, 147 Ariz. 19, 22, 708 P.2d 110, 113 3 (Ariz. Ct. App. 1985); *Angle*, 626 P.2d at 131; *FDIC v. Air Fla. Sys., Inc*. 822 F.2d 833, 840 4 (9th Cir. 1987).

**2). Contract Interpretation**

Under Arizona law, interpretation of a contract is a matter of law to be determined by the court. *Hadley v. Southwest Prop., Inc*., 570 P.2d 190, 193 (Ariz.1977). Where the language of a contract is clear and unambiguous, it must be given effect as written. *Id*. "The controlling rule of contract interpretation requires that the ordinary meaning of language be given to words when circumstances do not show a different meaning is applicable." *Chandler Medical Bldg Partners v. Chandler Dental Group*, 175 Ariz. 273, 277, 855 P.2d 787, 791 (Ariz. Ct. App. 1993) (citations omitted). "A contract must be construed so that every part is given effect, and each section of an agreement must be read in relation to each other to bring harmony, if possible, between all parts of the writing." *Id*. "As a corollary, the court will not construe one provision in a contract so as to render another provision meaningless [and] must apply a standard of reasonableness in contract interpretation." *Id*. In order to determine the ordinary meaning of a word, the Court may look to the dictionary definition of the term. *Horton v. Mitchell*, 200 Ariz. 523, 527, 29 P.3d 870, 875 (Ariz. Ct. App. 2001) (reciting the standard of applying ordinary meaning to contract terms and using a dictionary definition to assist in determining such meaning).

If "an ambiguity exists on the face of [a] document or the language admits of differing interpretations, parol evidence is admissible to clarify and explain the document." *Johnson v. Earnhardt's Gilbert Dodge, Inc*., 212 Ariz. 381, 384, 132 P.3d 825, 828 (Ariz. 2006) (citations omitted). "The court may also admit evidence to determine the intention of the parties if 'the judge. . . finds that the contract language is "reasonably susceptible" to the interpretation asserted by its proponent." *Id*. (citing *Taylor v. State Farm Mut. Auto. Ins. Co*., 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993)).

/ / /

**3). Conditions Precedent**

A "condition precedent" is "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 764 (8th Cir. 2006) (citing Black's Law Dictionary (8th ed. 2004)). "Unlike a mere contract term, the breach of which must be material before it excuses another party from performing, one party's failure to fulfill a condition precedent entirely excuses any remaining obligations of the other party." *Id.* (citing Richard A. Lord, *Williston on Contracts* § 38:7 (4th ed. 1990) and *Restatement (Second) of Contracts* § 224 (1981)). Arizona recognizes two forms of conditions precedent: a condition precedent to the formation of a contract and a condition precedent to the duty or obligation of a party to perform. *Outdoor Life Network, LLC v. EMAT Corp.*, 2006 WL 3834287 *3 n. 29 (D. Ariz. 2006) (citing *Ry-Tan Const.*, 111 P.3d at 1021-22) (formal signing of a contract by a public entity a condition precedent to the formation of a contract) and *Am. Cont'l Life Ins. Co. v. Rainier Const. Co., Inc.*, 607 P.2d 372, 374-75 (Ariz.1980) (issuance of a certificate of completion a condition precedent to the duty to make final payment)). Moreover, Arizona has long held that in a contract containing a condition precedent in which the contract fails to state the effect of failure to perform the condition, a showing of prejudice is required before performance is excused for non-compliance with the condition. *State Farm Mut. Auto Ins. Co. v. Palmer*, 237 F.2d 887, 891 (9th Cir. 1956) (citing *Massachusetts Bonding & Ins. Co. v. Arizona Concrete Co.*, 47 Ariz. 420, 56 P.2d 188 (Ariz. 1936) and *Watson v. Ocean A. & G. Corp.*, 28 Ariz. 573, 238 P. 338 (Ariz. 1925)); *Lindus v. Northern Ins. Co. of New York*, 103 Ariz. 160, 438 P.2d 311 (Ariz. 1968) (absent a showing of material prejudice, an insured's failure to give timely notice does not discharge the insurer's continuing duty to provide insurance coverage). The burden of proving prejudice is on the party claiming prejudice. *Id.*

"Generally, a construction of provisions as conditions precedent is not favored when construing conditional provisions in a contract." *Angle v. Mario Builders, Inc.*, 626 P.2d 126, 129-30 (Ariz. 1981) (citing 17 Am. Jur. 2d Contracts § 321 (1964):

> The parties are at liberty to agree upon a condition precedent upon which their liability shall depend. However, the rule is that to make a provision in a contract a condition precedent, it must appear from the contract itself that the parties intended the provision so to operate ... It has been said that conditions precedent are not favored and the courts will not construe stipulations to be such unless required to do so by plain, unambiguous language or by necessary implication.

*Angle*, 626 P.2d at 129-30; *U.S. for Use and Ben. of Clark Bros. Contractors v. Bechtel Constructors Corp.*, 951 F.2d 365 (9th Cir. 1991) ("Construing provisions as conditions precedent is disfavored.") Thus, because conditions precedent are not favored under Arizona law, contract stipulations will not be construed as such unless required by the plain, unambiguous language or necessary implication. A condition precedent may also be waived. *Angle*, 626 P.2d at 131.

**4). The Doctrine of Substantial Performance**

"Substantial performance is the antithesis of material breach; if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered, and further performance by the other party is excused." 15 Williston on Contracts § 44:55 (4th ed. 1990) (footnotes omitted). Arizona recognizes the doctrine of substantial performance. Rev. Ariz. Jury Instr. (Civil) (Contract 10), at 139-140 (4th ed. 2005) (citing, *inter alia*, Restatement (Second) of Contracts § 237, comment d (1981)); *Cracchiolo v. Carlucci*, 62 Ariz. 284, 293, 157 P.2d 352, 355 (1945). In Arizona, substantial performance means that one party has performed all that is required by a contract, except for slight deficiencies in performance that can easily be cured. *Id*. To determine whether a party has substantially performed his obligations under a contract, the court or jury should consider the nature of the promised performance, the purpose of the contract, and the extent to which any deficiencies in performance have defeated that purpose. *Id*. The burden of proving substantial performance is on the party claiming it. *Id*. Like the determination of whether a breach is material, whether there has been substantial performance of a contract is a question of fact for the jury to resolve. *Unicover World Trade Corp. v. Tri-State Mint, Inc.*, 24 F.3d 1219, 1221 (10th Cir. 1994) (marketer's failure to make

- 13 -

written demand that mint cure its nonperformance was nonmaterial breach of contract); Am Jur. 2d Contracts § 620 (2007).  The purpose of the doctrine of substantial performance is to avoid an injustice to a party to a contract whose performance has deviated from the contract in only a trivial or minor way. *American Continental Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 60, 607 P.2d 372, 379 (Ariz. 1980). It is an equitable doctrine, intended to prevent unjust enrichment. *Ballou v. Basic Construction Co.*, 407 F.2d 1137, 1140 (4th Cir. 1969) (approvingly quoting the district court's ruling based on Virginia law).

**5). Mitigation of Damages or the Doctrine of Avoidable Consequences.** [8]

In Arizona, damages for breach of contract may be limited if a non-breaching party fails to take reasonable steps to mitigate the damages resulting from the breach. *Northern Arizona Gas Service, Inc. v. Petrolane Transport, Inc*., 145 Ariz. 467, 477, 702 P.2d 696, 706 (Ariz. Ct. App.1984) (citations omitted).  "A basic principle of the law of damages is that one who claims to have been injured by a breach of contract must use *reasonable means* to avoid or minimize the damages resulting from the breach." *West Pinal Family Health Center, Inc. v. McBryde*, 162 Ariz. 546, 548, 785 P.2d 66, 68 (Ariz. Ct. App. 1989) (citing, *inter alia*, *Restatement (Second) of Contracts* § 350 (1981) (emphasis added)). Failure to mitigate damages is an affirmative defense. [9] *Id*. at n. 1. Whether the duty is violated is a question of fact. *Northern Arizona Gas Service, Inc.*, 702 P.2d at 706.

---

[8] *Barnes v. Lopez*, 25 Ariz.App. 477, 481, 544 P.2d 694, 698 (Ariz. Ct. App. 1976); *England v. Mack Trucks, Inc*., 2008 WL 168689 (W.D. Wash. 2008) ("The duty to mitigate damages, also known as the doctrine of avoidable consequences . . . .").

[9] Failure to mitigate damages is not among the affirmative defenses enumerated in Fed. Rule Civ. P. 8(c)  but the Ninth Circuit has joined the overwhelming majority of federal courts in concluding that lack of mitigation is a Rule 8 affirmative defense as a matter of federal procedural law. *999 v. C.I.T. Corp.*, 776 F.2d 866, 870 n. 2 (9th Cir. 1985); *Modern Leasing, Inc. of Iowa v. Falcon Mfg. of Cal., Inc*., 888 F.2d 59, 62 (8th Cir. 1989). Failure to plead lack of mitigation of damages as an affirmative defense results in a waiver of that defense and its exclusion from the case." *Id*.

1  Mindful of the foregoing controlling legal standard and applicable substantive
2 law, the Court will consider the parties' dispositive motions.

3 **V. Discussion**

4  While the parties agree there is a contract governing their relationship and
5 obligations to each other, they disagree under the facts of this case which documents are
6 required to be delivered by the Bank before the Broker is obligated to repurchase a bad loan.
7 Assuming *arguendo* that the return of the deed of trust is a material term to the parties'
8 Agreement and that prejudice would result to the Broker if it were not returned upon
9 repurchase, the Court concludes that the Bank's delivery of the deed of trust to the Broker
10 is not a condition precedent to the Broker's obligation to repurchase the subject loan.

11  Fairly read, the parties' Agreement does not expressly, or by necessary
12 implication, make delivery of the security (deed of trust) back to the Broker a condition
13 precedent before the Broker is obligated to repurchase the loan. There are no words or
14 phrases in paragraph K, or elsewhere in the Agreement, demonstrating that both parties to
15 the Agreement clearly intended the delivery of the deed of trust to the Broker is a condition
16 precedent to the Broker's obligation to repurchase the loan. Words or phrases, such as, "if
17 the deed of trust is returned," "on condition that the deed of trust is returned," or "provided
18 the deed of trust is returned" are absent from the parties' Agreement. While there is no
19 requirement in Arizona that such words or phrases be utilized to create a condition precedent,
20 courts conclude that their absence is probative of the parties' intention that a promise was
21 made rather than a condition imposed. *Washington Properties, Inc. v. Chin, Inc.*, 760 A.2d
22 546, 549 (D.C. 2000); *Mackinder v. Schawk, Inc.*, 2005 WL 1832385, *6 (S.D.N.Y. 2005)
23 (citing 13 Williston, On Contracts § 38:16 (4th ed. 2000) (applying New York law));
24 *International Food Concepts, Inc., v. Eastern Agricultural and Food*, 242 F.3d 382 (9th Cir.
25 2000) ("Although no particular words are required to create a condition precedent,
26 contractual language will not be construed as such unless that clearly appears to have been
27 the intent of the parties.") (applying Pennsylvania law));  *Cedyco Corp. v. PetroQuest
28 Energy, LLC*, 497 F.3d 485, 489 (5th Cir. 2007) (applying Texas law)).

A reasonable construction of the language utilized in the parties' Agreement does not "plainly and unambiguously" show that the parties' intention was create a condition precedent of returning the deed of trust to the Broker before repurchase is required. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 181, 939 P.2d 811, 814 (Ariz. Ct. App. 1997) ("[C]ourts are not inclined to construe a contractual provision as a condition precedent unless such construction is plainly and unambiguously required by the language of the contract.") A court cannot expand the language used in the parties' contract beyond its plain and ordinary meaning, nor will it add something to the contract which the parties have not put there, especially for sophisticated parties. *Lawrence v. Beneficial Fire & Casualty Ins. Co.*, 8 Ariz.App. 155, 158, 444 P.2d 446, 449 (Ariz. Ct. App. 1968); *Mackinder*, at 6 (citing *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Republic of Romania*, 123 F.Supp.2d 174, 188, fn. 16 (S.D.N.Y. 2000) ("court declined to find a condition precedent in settlement contract, stating that if sophisticated parties intended a condition precedent, they could have explicitly so provided.")).

Considering the foregoing and that Arizona law disfavors construing provisions of a contract as conditions precedent, the Court concludes that the Bank's return of the deed of trust to the Broker is not a condition precedent to the Broker's obligation to repurchase the subject loan under the parties' Agreement. Nevertheless, the Court finds that the Broker has created an issue of material fact for resolution by the trier of fact, i.e., whether return of the deed of trust is a material term of the parties' Agreement before the Broker's obligation to repurchase the subject loan arises.

The Court agrees with the Broker that, even though not expressly set forth in their Agreement, return of the deed of trust to Broker may be deemed a material term of the parties' contract before Broker is required to perform. Arizona law clearly provides that the terms of a contract may be expressly stated in a contract, inferred from the parties' statements and conduct or may be established by reference to a professional custom in the community. *Wagenseller*, 710 P.2d at 1036; *Angle*, 626 P.2d at 131. The Bank's own evidence supports the Broker's argument that return of the deed of trust is a material term to the parties'

- 16 -

1 Agreement because it acknowledges the "industry practice" and the "common practice in the
2 residential real estate lending industry that if the parties agree to a repurchase of a loan,
3 tender of security will occur." (PSSOF, ¶¶ 6 and 10, Gaia Aff. ¶¶ 7 and 11) Moreover, some
4 of the factors set forth in § 241 of the *Restatement (Second) of Contracts* militate in favor of
5 a finding of materiality. The Bank's argument that allowing EMC to keep the loan's security
6 as a part of the Bank's duty to mitigate its damages is unpersuasive because its mitigation
7 must be "reasonable" to minimize the Broker's alleged breach of the Agreement for failure
8 to repurchase the loan. Whether return of the deed of trust is a material term to the parties'
9 Agreement and whether the Bank's conduct was reasonable to minimize the Bank's damages
10 due to the Broker's alleged breach of the Agreement are questions of fact reserved for trial.
11 *Jeski*, 708 P.2d at 113;  *Angle*, 626 P.2d at 131;  *Northern Arizona Gas Service, Inc.*, 702
12 P.2d at 706.

13        The Court also concludes that the Agreement's notice-to-repurchase provision
14 is not a condition precedent to the Broker's obligation to repurchase the subject loan.
15 Although it does not deny its agent received oral and email notice to repurchase the
16 Ter-Abraamyan loan or that it was timely received per the Agreement, Broker argues that the
17 method used to deliver the notice-to-repurchase is a condition precedent and absent strict
18 compliance, it is relieved of its obligation to repurchase the loan. Using a similar analysis
19 related to whether delivery of the deed of trust to the Broker is a condition precedent, the
20 Court finds that a reasonable construction of the language utilized in the parties' Agreement
21 in paragraph L does not "plainly and unambiguously" show that the parties intended to create
22 a condition precedent such that strict compliance with the Agreement's method-of-notice was
23 mandated before the Broker was required to repurchase the loan.  *L. Harvey Concrete, Inc.*,
24 939 P.2d at 814. There are no explicit  words or phrases in paragraph L, or elsewhere in the
25 Agreement, indicating that both parties clearly intended that only delivery of the notice to
26 Brandieg@mortgagesourcescorp.com  "in the normal course of business" or by registered
27 or certified mail sent to no designated person at "2809 Hall, Hays, Kansas 67601"  would
28 trigger the Broker's obligation to repurchase the loan. In light of Arizona law disfavoring a

1  construction of contractual provisions as conditions precedent, the Court concludes that the
2  Bank's failure to comply with the Agreement's technical notice provisions is not a condition
3  precedent to the Broker's obligation to repurchase the subject loan. Whether delivery of the
4  notice to repurchase exactly as delineated in the parties' Agreement was a material term
5  under the facts and circumstances of this case and whether the Bank's oral and email notice
6  actually delivered to Broker's counsel constitutes substantial performance are questions of
7  fact that may only be properly resolved at trial. *Jeski*, 708 P.2d at 113; Rev. Ariz. Jury Instr.
8  (Civil) (Contract 10), *supra*.; *Unicover World Trade Corp.*, 24 F.3d at 1221.

Accordingly,

**IT IS ORDERED** that Plaintiff The Biltmore Bank of Arizona's Motion for Partial Summary Judgment, docket # 15, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant First National Mortgage Sources, L.L.C.'s Cross-Motion for Summary Judgment, docket # 19, is **DENIED**.

**IT IS FURTHER ORDERED** that the Bank's request for oral argument is **DENIED**.

Dated this 26th day of February, 2008.

_____
Lawrence O. Anderson
United States Magistrate Judge